IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

JOHN E. BUMGARNER,

    Plaintiff,

vs.                              Civil Action No. 5:16-cv-05963

JORDAN CLENDENEN, individually,
DANIEL HINKLEY, JR., individually,
JEREMY BENNETT, individually,
TOWN OF ALDERSON, a municipal
corporation.

    Defendants.

## COMPLAINT

This complaint, brought pursuant to 42 U.S.C. Section 1983, as well as the Fourth Amendment to the United States Constitution, arises out of the Defendants' use of excessive force on the Plaintiff on or about July 4, 2014, in the Town of Alderson, Greenbrier County, West Virginia, within the Southern District of West Virginia, as well as the development and implementation of a pattern or practice of excessive force which led to the said incident.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

1. The Plaintiff was at all times relevant hereto a resident of Alderson, Greenbrier County, West Virginia, within the Southern District of West Virginia.

2. Defendant Jordan Clendenen was at all times relevant hereto an officer of the Alderson Police Department, which is established, equipped and maintained by the

1

Town of Alderson, and was at all times relevant hereto acting under the color of law and within the scope of his employment. Said Defendant is named herein in his individual capacity.

3. Defendant Daniel Hinkley, Jr. was at all times relevant hereto an officer of the Alderson Police Department, which is established, equipped and maintained by the Town of Alderson, and was at all times relevant hereto acting under the color of law and within the scope of his employment. Said Defendant is named herein in his individual capacity.

4. Defendant Jeremy Bennett was at all times relevant hereto an officer of the Alderson Police Department, which is established, equipped and maintained by the Town of Alderson, and was at all times relevant hereto acting under the color of law and within the scope of his employment. Said Defendant is named herein in his individual capacity.

5. Defendant Town of Alderson, a municipal corporation, is a political subdivision of the State of West Virginia.  See West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, et seq.

## **FACTS**

6. Plaintiff incorporates by reference the allegations in all previous paragraphs.

7. On or about July 4, 2014, the Plaintiff and his wife were traveling Northeast on Riverview Avenue in Alderson, Greenbrier County, West Virginia.  Prior to reaching the stop sign at the intersection of Riverview Avenue and North Monroe Street, the Plaintiff had stopped to let Robert Baker enter Riverview Avenue from a side street.

8.  When the Plaintiff, with Robert Baker in front, reached the intersection of Riverview Avenue, the traffic was stopped for no apparent reason. The Plaintiff's view was blocked by Mr. Baker's vehicle.

9.  After sitting in place for 10 to 15 minutes, Plaintiff raised his hand and briefly tapped his horn to get Mr. Baker's attention to see why traffic wasn't moving.

10. The town of Alderson hosts an annual Fourth of July celebration which had recently ended. Defendant Clendenen was apparently directing traffic at the intersection and had stopped traffic for another police officer to navigate the traffic. After the Plaintiff honked his horn, Defendant Clendenen left his post at the center of the intersection, aggressively walking past Mr. Baker's vehicle appearing agitated. The driver of the vehicle immediately behind the Plaintiff testified that Defendant Clendenen "completely overreacted to Mr. Bumgarner's blowing his horn."

11. Defendant Clendenen angrily approached Plaintiff's vehicle and asked Plaintiff if he had a problem, to which Plaintiff replied "no." Plaintiff listened to Defendant Clendenen explain the reason for the traffic stoppage. Plaintiff thanked Defendant Clendenen and Defendant Clenden then began walking away. Defendant Clendenen took 5 or 6 steps, then suddenly turned around, walked back towards Plaintiff and stated that if Plaintiff blew his horn again, he would issue him a citation for blowing his horn in that manner because it was illegal.

12. Plaintiff had not again tapped his horn. Defendant Clendenen never issued a warning or a citation to Plaintiff for blowing his horn.

13. The Plaintiff, who is a retired West Virginia State Police trooper, meaning no disrespect to Defendant Clendenen, stated "Boy, I didn't know tapping your horn was against the law."

14. Defendant Clendenen angrily responded, "If you call me 'boy' one more time, I will yank you out of your truck and show you who the boy is." Plaintiff responded that use of the word "boy" is not against the law. Defendant Clendenen then ordered Plaintiff to pull his truck to the side of the road. Plaintiff could not immediately pull his truck to the side of the road because he was trapped between Mr. Baker's car in front of him and Mr. Bradley's car behind him.

15. Mr. Baker, the driver in front of the Plaintiff, was told to go ahead and move his vehicle – that he could go. Defendant Clendenen asked Plaintiff to pull his vehicle to the side of the road. Plaintiff stated that he had done nothing wrong. The driver of the vehicle immediately behind the Plaintiff testified that, at this time, Defendant Clendenen "was rude and using foul language, the "F word" and appeared to be losing control."

16. Defendant Clendenen was not allowing Plaintiff to leave or drive away and was blocking the Plaintiff from driving.

17. Defendant Clendenen radioed for backup. Defendant Hinkley and Defendant Bennett arrived. Plaintiff again stated that he had done nothing wrong. Defendant Clendenen responded that he was making a traffic stop. When asked about the alleged traffic infraction, Defendant Clendenen thought for a moment, grinned, and responded, "obstruction." Plaintiff was never thereafter charged with obstruction.

18.     Defendant Clendenen then suddenly, and unnecessarily, attempted to forcibly pull the Plaintiff's truck door open, in an attempt to forcibly pull the Plaintiff out of his vehicle.  Since there was no warning, Plaintiff's truck was still in gear and Plaintiff's foot was on the brake, so he initially attempted to hold the door closed in an attempt to retain control of the vehicle so that he could safely exit the vehicle.  Plaintiff noticed that his pistol, for which he had a permit, which was in his door side pocket was hanging out due to the jarring of the door, and about to fall out onto the ground.  Plaintiff, being a retired police officer, told Defendants Clendenen, Hinkley and Bennett he had a lawfully owned and concealed pistol, for which he had a permit, in the side pocket of the driver's door which was about to fall out onto the ground.  Plaintiff picked the pistol up by the butt, holding it with his two left fingers and his left thumb, with the barrel pointing down.  He held it up high so that all the officers could see it and that he meant no harm.  He expected one of the officers to take the pistol from him.  However, they said nothing.

19.     Defendants Clendenen, Hinkley, and Bennett reacted to Plaintiff's movements and drew their weapons and threatened to shoot Plaintiff.  At that point, the Plaintiff's lawfully owned and concealed pistol was safely dropped into the center console of the truck and was no longer being touched in any way by the Plaintiff.  Plaintiff made his hands visible to the officers.  He told them that he had a permit, and assuming they wanted to see the permit, he slowly went for his wallet to show them his concealed pistol permit, as well as his I.D.  Defendant Bennett said, "what's in your pocket?"  The Plaintiff replied, "my wallet and pistol permit."  Defendant Bennett again asked, "what's in your pocket?  I'm going to taze you."  The Plaintiff again replied, "I'm trying to get my wallet to show you my pistol permit and my I.D.  Plaintiff then got out his

wallet, and was in the process of pulling the identification out of the wallet, when he was attacked by Defendant Hinkley.

  20. Defendant Hinkley violently head-butted Plaintiff and physically dragged him out of his vehicle and threw him against the side panel of Plaintiff's truck, the collision between Plaintiff's shoulder and the truck, causing a large dent in the vehicle's side panel.  Defendant Hinkley struck Plaintiff in the head with his fist.  Blood was running down Plaintiff's face, as he continued to suffer strikes to his abdomen from Defendant Hinckley.  While Defendant Hinkley was beating Plaintiff, Defendants Clendenen and Bennett were holding Plaintiff's hands behind his back.  On Defendant Hinkley's signal, all three officers violently threw Plaintiff to the ground.  Plaintiff fell into a sitting position.  Defendant Hinkley kicked Plaintiff in the side of his face, and suffered kicks from the other officers on his left side and shoulder.  The officers then twisted his left arm behind his back and handcuffed Plaintiff.  As he twisted Plaintiff's left arm, he dropped his weight onto Plaintiff using his knee, injuring Plaintiff's left shoulder.  Plaintiff's wife got out of the passenger side of the truck and ran around to where her husband was lying on the ground to see if Plaintiff was okay, and remarked, "look what you've done to his eye."  Defendant Bennett then came towards her with a taser and forcibly grabbed her and put her in handcuffs, placing her in the back of a police cruiser.  Her handcuffs were later removed and she was released to drive Plaintiff's truck home.

  21. Plaintiff was charged by the defendant officers with the misdemeanor municipal violations of brandishing a deadly weapon, as well as resisting arrest - both violations carrying a maximum penalty of 30 days in jail upon conviction.  Following a bench trial before the Town of Alderson municipal judge, he was found guilty of both

charges and sentenced to a fine and five days in jail, suspended. The Plaintiff appealed the convictions and a second bench trial was held before the Circuit Court of Greenbrier County. Following the trial, the Circuit Court found the Plaintiff not guilty of brandishing a deadly weapon. He was found guilty of resisting arrest. The Circuit Court reinstated the previous sentence of a $100.00 fine and 5 days in jail, suspended. Plaintiff's wife was not charged with any crimes.

22. In the days following the beating, the Plaintiff suffered from the physical injuries which were inflicted on him during the beating committed by the defendants. He particularly began to suffer problems with his left eye. Plaintiff continues to suffer from his physical injuries, including serious problems with his left eye and left shoulder. Following a recent gonioscopy, the Plaintiff's treating ophthalmologist noted in June of 2016 that Plaintiff is suffering from increased trabecular meshwork pigmentation along with increased intraocular pressure, as well as much more advanced cataracts as a consequence of the left-sided head and face trauma inflicted by the defendants in July of 2014. Plaintiff also suffered injury to his left shoulder from Defendant Clendenen dropping his full weight on Plaintiff's shoulder with his knee, for which Plaintiff was required to undergo surgery. Plaintiff has also suffered emotional damage, including symptoms of post traumatic stress disorder, as a result of the beating inflicted by the defendants.

23. Upon information and belief, the Town of Alderson, on behalf of the Alderson Police Department has developed, implemented, fostered and encouraged a policy of using undocumented excessive force against arrestees and pretrial detainees, in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

24. In further of the policy, pattern and practice, on July 4, 2014, the defendants used violent physical force against the Plaintiff who, although being verbally noncompliant with their requests, was only under criminal investigation for blowing his vehicle's horn for a non-moving-related reason, and who was never alleged to have assaulted or attacked the officers in any way.

25. Upon information and belief, the defendants were trained, and made aware, that such uses of force as described above, and which were used on the Plaintiff, were appropriate under the Town of Alderson Police Department use of force policy. Moreover, the defendant officers were led to believe that such uses of force were appropriate, and therefore did not engage to stop other officers from attacking and beating the Plaintiff. At the time of the beating, the Plaintiff was not armed. Nor did he pose a safety threat to any individual.

## COUNT ONE - EXCESSIVE FORCE UNDER 42 U.S.C. 1983
## VIOLATION OF THE FOURTH AMENDMENT

26. Plaintiff incorporates by reference all the allegations contained in the previous paragraphs.

27. The defendant law enforcement officers, under color of state law, used excessive force against the Plaintiff, as described above in detail, on July 4, 2014.

28. When the defendant law enforcement officers engaged in inflicting violent physical force against Mr. Bumgarner, causing blunt force trauma, blood loss, pain, and restriction of mobility, by head butting him in the face, punching him in the face and body repeatedly, and slamming him into the side of his vehicle, as well as the ground, no objectively reasonable officers could have perceived Mr. Bumgarner as posing an

immediate threat to the safety of the officers or anyone else so as to require the infliction of such violent force.

29. Although at one point earlier in the encounter Mr. Bumgarner introduced a firearm, he notified the officers of his intentions, that he meant no harm, and held the firearm in a non-threatening manner, as was corroborated by eyewitnesses, and ultimately dropped the firearm into the truck's console. The firearm was no longer in the Plaintiff's possession at the initiation of the beating.

30. Upon information and belief, the officers merely felt entitled to beat him due to the prior presence of a firearm. When the Plaintiff's wife attempted to check on her husband on the asphalt being beaten, one of the defendant officers shouted at her that it was happening because her husband pulled a firearm on police officers.

31. On July 4, 2014, the Plaintiff was a 66 year old retired police officer, suffering from pre-existing physical ailments, including disabilities suffered during his service as a state trooper. He had no criminal history. At the time violent force was inflicted on Mr. Bumgarner, he had not been charged with any crime. He was under suspicion of violating a traffic ordinance for unnecessarily blowing his horn - an extremely minor alleged traffic infraction. The officers never alleged, nor charged Mr. Bumgarner with, physically assaulting or striking them. Mr. Bumgarner was not attempting to flee. He was merely being, at most, verbally noncompliant by asserting that he had done nothing wrong. To the extent that these actions constituted "resisting arrest," any such resistance by the Plaintiff ceased prior to the allegations of excessive force by the defendant officers.

32. The defendant officers' actions were objectively unreasonable, unlawful, unwarranted, and in violation of Mr. Bumgarner's clearly established procedural and substantive rights, including the right to be free from excessive force under the Fourth Amendment of the United States Constitution. Fourth Circuit case law has long been clear that physical force by a police officer, including striking someone with a fist, and especially repeated strikes and kicks, is excessive in response to "mere words" by an arrestee where the arrestee "never pushed, kicked, or threatened anyone." Jones v. Buchanan, 325 F.3d 520 (4th Cir. 2003).

33. The defendant officers' actions were willful, wanton, intentional, malicious and done with a callous and reckless disregard for Mr. Bumgarner's Fourth Amendment right to be free from excessive force. In the event that this Court determines that the use of force, or any portion of the use of force, against Mr. Bumgarner at a time when he was a pretrial detainee, the Plaintiff pleads excessive force, in the alternative, under the Fourteenth Amendment of the U.S. Constitution.

34. John E. Bumgarner suffered harm and damages for which he is entitled to recover.

## COUNT TWO - BYSTANDER LIABILITY

35. Plaintiff incorporates by reference all the previous paragraphs.

36. In the event that any of the defendant officers, or other officers, observed, or had reason to know that a constitutional violation was being committed against Mr. Bumgarner on July 4, 2014, and possessed a realistic opportunity to intervene to prevent the harm from occurring to Mr. Bumgarner, and chose not to act, the plaintiff

makes a claim against them pursuant to 42 U.S.C. 1983 under <u>Randall v. Prince George's County, Md.</u>, 302 F.3d 188 (4th Cir. 2002).

## COUNT THREE - MUNICIPAL LIABILITY
## UNDER 42 U.S.C. 1983

37. Plaintiff incorporates by reference all the previous paragraphs.

38. The Town of Alderson instituted an official policy, custom, and practice of using excessive force against arrestees in violation of the Fourth Amendment to the U.S Constitution. Specifically, Alderson officers were instructed to, and encouraged to, inflict violent physical force on arrestees in response to mere words, or verbal noncompliance, or following the commission of minor criminal infractions where there is no threat to the safety of any individual nearby, including officers. The Town of Alderson written use of force policy specifically authorizes the use of violent physical force for the purpose of overcoming nonviolent, or verbal resistance, or to protect property, or to effect "other lawful objectives" such as to make an arrest - all situations which fall below the threshold set under Fourth Circuit case law for the use of violent physical force. Upon information and belief, this policy, custom and practice remains in effect.

39. The actions of the Town of Alderson employees, as described above in detail, were taken in furtherance of the said official policy, custom, and practice of using excessive force against arrestees.

40. Upon information and belief, in furtherance of the said policy, custom and practice, Alderson police officers have committed other civil rights violations in violation of the Fourth and Fourteenth Amendment rights to be free from excessive force.

41. As a direct and proximate result of the said policy, custom and practice, the Plaintiff was damages on July 4, 2014 when excessive force was used against him as described in Count One above, for which he is entitled to recover.

## COUNT FOUR - STATE LAW CLAIM FOR NEGLIGENCE

42. Plaintiff incorporates by reference all previous paragraphs.

43. Defendants specifically owed Plaintiff a duty of reasonable care. It was reasonably foreseeable to Defendants that Plaintiff would be harmed as a result of Defendants' actions.

44. Defendants, by and through, the police officers named as defendants herein, breached that duty as detailed above and incorporated herein, and furthermore by:

    a. negligently using excessive force against the Plaintiff;

    b. negligently failing to comply with federal constitutional standards for use of force against a citizen;

    c. negligently training the defendant police officers on proper and legal use of force;

    d. negligently supervising the defendant police officers.

45. As a direct and proximate result of the defendants' negligence, Plaintiff suffered harm, including personal injuries, emotional distress, medical expenses, pain and suffering, and continues to suffer damages, and is entitled to recover damages for the same.

## **PRAYER**

WHEREFORE, based on the above stated facts, the Plaintiff respectfully requests that this Honorable Court award:

1. Damages against the Defendants in an amount to be determined at trial which will fairly and reasonably compensate the Plaintiff for:

   a. Past, present and future medical expenses;

   b. Past, present and future pain and suffering;

   c. Loss of enjoyment of life;

   d. Psychological and emotional distress;

   e. Any other compensatory damages to be proven at trial;

   f. Punitive damages against the individual Defendants in an amount to be determined at trial;

   g. Reasonable attorney fees and costs;

   h. Any other relief that this Court deems is just and fair;

   i. All other damages provided by law;

   j. Injunctive relief requiring appropriate training, supervision and discipline in order to remedy all constitutional deprivations which the Plaintiff suffered;

   k. Declaratory judgment relief establishing the Defendants' above-described conduct violates the Plaintiff's clearly established constitutional rights.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

>                    JOHN E. BUMGARNER
>                    By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEYS AT LAW
611 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com

for the Plaintiff


/s Barry L. Bruce
Barry L. Bruce (WV Bar No. 511)
BARRY L. BRUCE AND ASSOCIATES, L.C.
101 West Randolph Street
P.O. Box 388
Lewisburg, WV 24901
(304) 645-4182
Fax: (304) 645-4183
blblaw@blblaw.org


for the Plaintiff